<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JSK WHIPPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> TOWNSHIP OF HANOVER, <br><br> Defendant. | Case No. 2:25-cv-11955 (BRM) (LDW) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff JSK Whippany, LLC's ("Plaintiff") Motion to Remand. (ECF No. 5.) Defendant Township of Hanover ("Defendant") opposed the motion. (ECF No. 14.) Plaintiff filed a Reply. (ECF No. 18.) Having reviewed and considered the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Plaintiff's Motion to Remand (ECF No. 5) is **DENIED**.

**I.   BACKGROUND**

Plaintiff owns a property in the Township of Hanover, Morris County, New Jersey, on which Plaintiff operates two hotels: the Red Carpet Inn and the Scottish Inn. (Compl. (ECF No. 1-2) at 2 of 11.) Plaintiff alleges it "operates the only economy-branded hotels in Hanover Township" and assists various government agencies, the Salvation Army, and local churches in "providing temporary lodging to vulnerable individuals." (*Id.* at 3 of 11.)

On April 24, 2025, Defendant adopted Ordinance 9-2025 (the "Ordinance"). (*Id.* at 4 of 11.) The Ordinance imposes a maximum stay limit for guests as well as guest registration

requirements. (*Id.*) Plaintiff argues the Ordinance "essentially bars [P]laintiff from operating [its] economy hotels," noting some of the individuals staying at the hotels "require long-term stays exceeding the thirty-day limit in the Ordinance." (ECF No. 5-1 at 2, 5.) In response, Plaintiff filed a Complaint in Lieu of Prerogative Writs on June 3, 2025, which challenges the lawfulness of the Ordinance. (*See generally* ECF No. 1-2.) The Complaint includes nine counts. (*See generally id.* at 5–8 of 11.) The first four counts raise claims under the United States Constitution and New Jersey Constitution, including violations of substantive due process (Count I), procedural due process (Count II), equal protection (Count III), and the Fourth Amendment (Count IV). (*See id.* at 5–6 of 11.) The fifth count alleges the Ordinance is unconstitutionally vague and overbroad (Count V)[1]. (*Id.* at 6–7 of 11.) The remaining counts include ultra vires unlawful delegation of authority (Count VI), preemption by state law (Count VII), unlawful zoning/spot zoning (Count VIII), and retaliation and bad faith (Count IX). (*Id.* at 7–8 of 11.)

On June 19, 2025, Defendant filed a Notice of Removal. (ECF No. 1.) In response, Plaintiff filed a Notice of Motion to Remand to State Court on July 16, 2025. (ECF No. 5.) Defendant filed an Opposition on August 4, 2025. (ECF No. 14.) Plaintiff filed a Reply on August 11, 2025. (ECF No. 18.) Plaintiff does not contest this Court has jurisdiction over this matter (ECF No. 18 at 1), nor does Plaintiff assert there was a defect in the removal process. Rather, Plaintiff's sole argument for remand is this Court should abstain from exercising jurisdiction pursuant to the *Pullman* doctrine. (ECF No. 5 at 1 (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)).)

Accordingly, the Court will not address the standard factors in reviewing a case for

---

[1] Unlike Counts I–IV, Count V does not explicitly reference the United States or New Jersey Constitutions, instead referencing the "constitutional doctrine of vagueness." (ECF No. 1-2 at 7 of 11.)

2

remand,[2] and instead will focus on the application of *Pullman*.

## II. LEGAL STANDARD

The *Pullman* doctrine derives from the United States Supreme Court's decision in *Railroad Commission of Texas v. Pullman Co.*, which recognized "a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion[,]'[] restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary." 312 U.S. 496, 501 (1941) (first quoting *Cavanaugh v. Looney*, 248 U.S. 453, 457 (1919); and then quoting *Di Giovanni v. Camden Ins. Ass'n*, 296 U.S. 64, 73 (1935)). Abstaining under *Pullman* is a "well-established procedure . . . aimed at the avoidance of unnecessary interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system." *Harrison v. NAACP*, 360 U.S. 167, 176 (1959).

"Courts may abstain under the *Pullman* doctrine when 'presented with both a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional question[.]'" *Mendham Methodist Church v. Morris Cnty.*, Civ. A. No. 23-2347, 2024 WL 4903677, at *3 (D.N.J. Nov. 27, 2024) (alteration in original) (quoting *Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628, 631 (3d Cir. 1991)). In other words, "*Pullman* abstention allows federal courts . . . to abstain from deciding a case if a state court's resolution of a state law issue would obviate the need for the federal court to reach a federal constitutional issue." *Artway v. Att'y Gen. of N.J.*, 81 F.3d 1235, 1270 (3d Cir. 1996). To abstain under *Pullman*,

---

[2] Typically, a notice of removal of a civil action must be filed by a defendant within thirty days of service. 28 U.S.C. § 1446(b). Upon the removal of an action, a plaintiff may challenge such removal by moving to remand the case back to state court. 28 U.S.C. § 1447. Grounds for remand include: "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal procedure." *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 352 (3d Cir. 1993).

3

the federal court must make three findings:

> (1) that uncertain issues of state law underlie the federal constitutional claims brought in the district court; (2) that the state law issues are amenable to a state court interpretation that would obviate the need for, or substantially narrow, adjudication of the federal claim; and (3) that important state policies would be disrupted through a federal court's erroneous construction of state law.

*Mendham Methodist Church*, 2024 WL 4903677, at *3 (quoting *Artway*, 81 F.3d at 1270). "If all three factors are present, the federal court must then consider whether abstention is appropriate by weighing such factors as the availability of an adequate state remedy, the length of time the litigation has been pending, and the impact of delay on the litigants." *Artway*, 81 F.3d at 1270 (citing *Chez Sez III Corp.*, 945 F.2d at 633).

The Supreme Court, however, has repeatedly warned "because of the delays inherent in the abstention process and the danger that valuable federal rights might be lost in the absence of expeditious adjudication in the federal court, abstention must be invoked only in 'special circumstances,' and only upon careful consideration of the facts of each case." *Harris Cnty. Comm'ns Ct. v. Moore*, 420 U.S. 77, 83 (1975) (citations omitted). "Abstention is an 'extraordinary and narrow exception,' not the rule." *Mendham Methodist Church*, 2024 WL 4903677, at *3 (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). "Abdication of this Court's exercise of its jurisdiction is only justifiable in 'exceptional circumstances.'" *Id.* (quoting *Allegheny Cnty. v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959)). Indeed, the Third Circuit has confirmed *Pullman* abstention is appropriate only "in rare cases." *Artway*, 81 F.3d at 1270.

### III. DECISION

Plaintiff argues the *Pullman* doctrine applies due to Counts VII and VIII of the Complaint. (ECF No. 5-1 at 8.) As for Count VII—preemption by state law—Plaintiff argues an unsettled

4

question of state law exists with respect to the New Jersey Hotel and Multiple Dwelling Law ("HMDL"), N.J. Stat. Ann. § 55:13A-1 *et seq.*, the answers to which may obviate or narrow the federal constitutional questions at issue. (*Id.* at 8–11.) Plaintiff further contends an erroneous interpretation of state law risks disrupting important state policies. (*Id.* at 11.) Similarly, Plaintiff argues Count VIII—unlawful zoning/spot zoning—involves an unsettled question of state law regarding whether the "authority to license a business [can] be used to prohibit a use of land that is otherwise permitted." (*Id.* at 11–12.) In response, Defendant argues the *Pullman* doctrine is inappropriate because the federal questions do not depend on unsettled state law. (ECF No. 14 at 4.)

The first *Pullman* factor requires "uncertain issues of state law [to] underlie the federal constitutional claims brought in the district court." *Mendham Methodist Church*, 2024 WL 4903677, at *3 (quoting *Artway*, 81 F.3d at 1270). This factor, like the other two *Pullman* factors, must be met for the *Pullman* doctrine to apply. *Chez Sez III Corp.*, 945 F.2d at 632 ("For *Pullman* to apply, the state or local law underlying the federal constitutional issue must be uncertain."). "The Supreme Court has held that *Pullman* abstention is not appropriate if an otherwise ambiguous statute has been authoritatively construed by the state courts." *United Servs. Auto. Ass'n v. Muir*, 792 F.2d 356, 361 (3d Cir.1986) (citing *Kusper v. Pontikes*, 414 U.S. 51, 55–56 (1973)).

In relevant part, the HMDL states: "This act is not intended, and nothing in this act shall be construed, to preclude the right of any municipality to adopt and enforce ordinances or regulations *more restrictive* than this act or any rules or regulations promulgated thereunder." N.J. Stat. Ann. § 55:13A-25(b) (emphasis added). Plaintiff argues there is no provision in the HMDL, or its implementing regulations, to which the Ordinance can be compared "that set[s] time limits on the occupancy of hotel rooms," or "authorizes a municipality to promulgate such time limits

5

for occupancy of hotel rooms." (ECF No. 5-1 at 10.) Nor, Plaintiff asserts, is there such a provision requiring "hotel owners or operators [to] maintain extensive guest logs of the sort mandated by the Ordinance." (*Id.*) Plaintiff contends the phrase "more restrictive" in § 55:13A-25(b) raises an unsettled question of state law. (ECF No. 5-1 at 9–10; ECF No. 18 at 5 ("[W]hen there is no statutory or state regulatory provision encompassing the area of conduct, how does one make a comparison to ascertain if the ordinance is less or more restrictive?").)

The Court is not convinced Plaintiff demonstrates there is an uncertain issue of state law. The Court finds the "more restrictive" language to be clear. In *Lake Valley Associates LLC v. Township of Pemberton*, the New Jersey Superior Court, Appellate Division, reviewed and interpreted § 55:13A-25(b), specifically emphasizing the language Plaintiff argues is unclear—*i.e.*, "more restrictive than this act or any rules or regulations promulgated thereunder"—and stated, "No legislative statement could be clearer."[3] 987 A.2d 623, 627 (N.J. Super. Ct. App. Div. 2010) (per curiam). But even if the statute is ambiguous, New Jersey Courts have construed § 55:13A-25(b) to say municipalities may enact codes no less restrictive than state law. In *Dome Realty, Inc. v. City of Paterson*—a case cited by both Plaintiff and Defendant (ECF No. 5-1 at 8–9; ECF No. 14 at 11)—the New Jersey Supreme Court interpreted § 55:13A-25(b) and stated, "Municipalities may therefore establish remedial measures for violations of their own housing codes, so long as the content of the codes themselves is no less restrictive than State regulations." 416 A.2d 334,

---

[3] In the part of the *Lake Valley* opinion from which this statement is quoted, the *Lake Valley* court quoted the trial court's opinion because the appellate court "fully agree[d] with [the trial court's] analysis." 987 A.2d at 626–27. Although the court's statement regarding the clear nature of § 55:13A-25(b) was written in the context of field preemption, this Court finds the Appellate Division's statement to be instructive here. Moreover, the *Lake Valley* court agreed with the trial court's application of the "more restrictive" standard, stating, "It is not debatable that the ordinance does not conflict with the [HMDL]. Rather, it is in some ways more restrictive and expansive. . . . Such restriction and expansion is specifically allowed in the [HMDL] itself." *Id.* at 627.

6

346 (N.J. 1980). Moreover, in a companion case to *Dome*, the New Jersey Supreme Court reiterated the HMDL "specifically permits stricter local enforcement of housing standards than that provided by State law." *State v. C. I. B. Int'l*, 416 A.2d 362, 369 (N.J. 1980). Therefore, this Court does not find an unsettled issue of state law with respect to § 55:13A-25(b), which means the first necessary *Pullman* factor has not been met. *See Chez Sez III Corp.*, 945 F.2d at 632 (concluding a zoning ordinance presented unsettled issues of state law, meeting the first *Pullman* factor, when the ordinance "ha[d] never been interpreted by the New Jersey courts").

To support its argument regarding an unsettled issue of state law, Plaintiff relies on *Cinnaminson Motel Owners Association v. Township of Cinnaminson*, 554 A.2d 1372 (N.J. Super. Ct. Law Div. 1987). In *Cinnaminson*, the New Jersey Superior Court, Law Division, considered a challenge to a local ordinance under the HMDL. *Id.* at 1373. Although the court found it difficult to apply the "more restrictive" standard in § 55:13A-25(b), the court ultimately concluded on the merits the ordinance at issue "does not pass [the "more restrictive"] test" and "therefore cannot survive." *Id.* at 1375.[4] Even if evaluating the Ordinance under the HMDL—*i.e.*, considering whether the Ordinance is in fact "more restrictive" than the HMDL—proves to be difficult, such difficulty would lie in the application of law to fact, not in the uncertainty of the law as the *Pullman* doctrine requires. *See Oxford House-Evergreen v. City of Plainfield*, 769 F. Supp. 1329, 1337 (D.N.J. 1991) (differentiating "application of law to fact" from "'unsettled' New Jersey Law"). Indeed, "[f]ederal and state courts are equally capable of applying settled state law to a difficult

---

[4] *Cinnaminson* characterizes *Dome*'s statement regarding § 55:13A-25(b)—*i.e.*, "Municipalities may therefore establish remedial measures for violations of their own housing codes, so long as the content of the codes themselves is no less restrictive than State regulations"—as *dicta*. 554 A.2d at 1373 n.2. However, the Appellate Division has since acknowledged *Dome*, in construing § 55:13A-25(b), "upheld [a] local law as more restrictive." *Middlesex Cnty. Health Dep't v. Middlesex Cnty. Utils. Auth.*, 617 A.2d 300, 301 n.2 (N.J. Super. Ct. App. Div. 1992).

7

set of facts." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 147 (3d Cir. 2014) (quoting *Heritage Farms Inc. v. Solebury Twp.*, 671 F.2d 743, 747 (3d Cir. 1982)).

As for Count VIII, the Court similarly does not find an unsettled issue of state law. Count VIII alleges "[t]he Ordinance constitutes impermissible spot zoning and is invalid." (ECF No. 1-2 at 8.) New Jersey courts have an established jurisprudence with respect to spot zoning. *See, e.g.*, *Riya Finnegan LLC v. Twp. Council of S. Brunswick*, 962 A.2d 484, 491 (N.J. 2008) ("Generally, we have defined spot zoning to be 'the use of the zoning power to benefit particular private interests rather than the collective interests of the community.'" (quoting *Taxpayers Ass'n of Weymouth Twp., Inc. v. Weymouth Twp.*, 364 A.2d 1016, 1023 (1976))); *id.* ("We [have] afforded the concept, and the underlying principles that inform the court's analysis of a spot zoning challenge, an expansive description . . . ."); *id.* ("As we have explained it, 'spot zoning is the antithesis of planned zoning. The test is whether the particular provision of the zoning ordinance is made with the purpose or effect of furthering a comprehensive scheme or whether it is designed merely to relieve a lot or lots from the burden of a general regulation.'" (citation modified) (quoting *Palisades Props., Inc. v. Brunetti*, 207 A.2d 522, 533 (N.J. 1965))); *Blackridge Realty, Inc. v. City of Long Branch*, 332 A.3d 1166, 1177 (N.J. Super. Ct. App. Div. 2025) ("[A] charge of spot zoning will withstand a motion for summary judgment if a genuine issue of fact exists as to whether a municipality 'use[d] . . . [its] zoning power to benefit particular private interests rather than the collective interests of the community.'" (quoting *Taxpayers Ass'n of Weymouth Twp., Inc.*, 364 A.2d at 1023)).

Likewise, New Jersey precedent is developed with respect to inverse spot zoning. *See, e.g.*, *Riya Finnegan*, 962 A.2d at 492 ("As the United States Supreme Court has recognized, any 'land-use decision which arbitrarily singles out a particular parcel for different, less favorable treatment

8

than the neighboring ones' is reverse or inverse spot zoning." (quoting *Penn Cent. Transp. Co. v. N.Y. City*, 438 U.S. 104, 132 (1978))); *id.* at 491 ("In our most extended discussion of these [spot zoning] concepts, we addressed a property owner's claim that changing the zoning designation that affected only his property was inverse spot zoning."); *Petlin Assocs., Inc. v. Twp. Of Dover*, 316 A.2d 1, 3 (N.J. 1974) (finding zoning changes constituted inverse spot zoning); *Rocky Top, LLC v. City of S. Amboy*, Dkt. No. A-3382-09T2, 2012 WL 3930371, at *30 (N.J. Super. Ct. App. Div. Sept. 11, 2012) ("Any land-use decision which arbitrarily singles out a particular parcel for different, less favorable treatment than the neighboring ones is reverse or inverse spot zoning." (citation modified) (quoting *Riya Finnegan*, 962 A.2d at 492)). Therefore, Count VIII would require this Court to apply established law and precedent to the facts, which, as explained above, does not trigger *Pullman* abstention.

  Accordingly, because the Court does not find an uncertain issue of state law, the Court declines to abstain under the *Pullman* doctrine and need not address the second two *Pullman* factors. *Mendham Methodist Church*, 2024 WL 4903677, at *5 ("As there is no 'uncertain issue[] of state law,' *Pullman* abstention is inappropriate." (quoting *Artway*, 81 F.3d at 1270)). Plaintiff's Motion to Remand is therefore **DENIED**.

  **IV. CONCLUSION**

  For the reasons set forth above, Plaintiff's Motion to Remand (ECF No. 5) is **DENIED**. An appropriate order follows.

           */s/ Brian R. Martinotti*
           **HON. BRIAN R. MARTINOTTI**
           **UNITED STATES DISTRICT JUDGE**

Dated: October 14, 2025